O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HKM ENTERPRISES, INC D/B/A ADAPTIVE LAUNCH SOLUTIONS,<br><br>Plaintiff,<br><br>v.<br><br>PARSONS GOVERNMENT SERVICES, INC., A NEVADA CORPORATION AND PARSONS CORPORATION, AND DELAWARE CORPORATION,<br><br>Defendants. | Case No.: 2:23-cv-10592-MEMF-PD<br><br>**ORDER DENYING MOTION TO DISMISS [DKT. NO. 65] AND GRANTING REQUEST FOR JUDICIAL NOTICE [DKT. NO. 66]** |

Before the Court are the Motion to Dismiss and Request for Judicial Notice filed by Defendants Parsons Government Services, Inc. and Parsons Corporation, Dkt. Nos. 65 ("Motion"), 66 ("RJN"). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons stated herein, the Court DENIES the Motion to Dismiss.

///

///

///

1

## I.    Background

The Court has already discussed the background of this case at length in its Order Granting in Part Motions to Dismiss. *See* Dkt. No. 41 ("First MTD Order"). The Court will discuss only the procedural background in this Order.[1]

### A.  Procedural History

Plaintiff HKM Enterprises Inc. d/b/a Adaptive Launch Solutions ("ALS") filed suit in this Court on December 18, 2023. *See* Dkt. No. 1 ("Complaint"). ALS brought seven causes of action against Parsons Government Services, Inc. ("Parsons Government") and Parsons Corporation ("Parsons"; together with Parsons Government, "Defendants"): (1) breach of contract; (2) anticipatory breach of contract; (3) fraudulent inducement; (4) breach of the covenant of good faith and fair dealing; (5) violation of California Business and Professions Code Section 17200 (Unfair Competition Law or "UCL"); (6) declaratory relief as to the meaning of the IDIQ Contract; and (7) preliminary injunctive relief. *See generally id.*

Defendants each filed a motion to dismiss on February 8, 2024. Dkt. Nos. 24, 25. The Court granted in part and denied in part the motions to dismiss. First MTD Order. The Court granted ALS leave to file an amended complaint. *Id.* at 22.

On September 9, 2024, ALS filed the First Amended Complaint. Dkt. No. 42 ("1AC"). The 1AC alleges nine causes of action, some of which are new: (1) breach of contract; (2) breach of implied joint venture/partnership agreement, (3) fraud; (4) breach of the covenant of good faith; (5) violation of the UCL; (6) declaratory relief; (7) misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act; (8) misappropriation of trade secrets in violation of the Defend Trade Secrets Act; and (9) unjust enrichment. *See generally* 1AC.

---

[1] This Order states facts taken from the allegations in Plaintiff HKM Enterprises Inc.'s Second Amended Complaint, Dkt. No. 63 ("2AC"), unless otherwise indicated. For the purposes of this Order, the Court treats the factual allegations in the 2AC as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

On October 23, 2024, Defendants filed a motion to dismiss the 1AC. Dkt. No. 46. The Motion includes a request for judicial notice. Dkt. No. 46-2. The Motion was fully briefed. Dkt. Nos. 47, 48. On February 25, 2025, the Court issued an Order Granting in Part Defendants' Motion to Dismiss the 1AC with leave to amend. Dkt. No. 51 ("Second MTD Order"). The Second MTD Order also granted Defendants' October 23, 2024 Request for Judicial Notice. *Id.*

On March 13, 2025, the Court Ordered ALS to file a trade secret information statement and file an amended complaint. On April 28, 2025, ALS filed a Second Amended Complaint. Dkt. No. 63 ("2AC"). The 2AC alleged five causes of action: : (1) breach of contract; (2) fraud; (3) breach of the implied covenant of good faith and fair dealing; (4) misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act; and (5) misappropriation of trade secrets in violation of the Defend Trade Secrets Act. *See generally* 2AC.

On May 12, 2025, Defendants filed the instant Motion. Motion. On June 23, 2025, ALS filed an Opposition to the Motion. Dkt. No. 72 ("Opposition"). On July 3, 2025, Defendants filed a Reply in Support of their Motion. Dkt. No. 75 ("Reply").

## REQUEST FOR JUDICIAL NOTICE [DKT. NO. 66]

### I.    Applicable Law

"[A] court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While "undisputed matters of public record" are judicially noticeable, a court may not take notice of disputed facts in public records. *Lee*, 250 F.3d at 689; *see also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

Courts in this district have routinely granted requests for judicial notice as to the U.S. Copyright Office's Public Records Catalogue. *See, e.g.*, *Evans v. NBCUniversal Media, LLC*, No. CV 21-0984-CBM-PD(x), 2021 WL 4513624, at *2  (C.D. Cal. July 23, 2021) (granting judicial notice of the presence of movie title in USCO Public Catalogue); *Fisher v. Nissel*, No. CV 21-5839-CBM-(KSx), 2022 WL 16961479, at *3–4 (C.D. Cal. Aug. 15, 2022) (granting judicial notice as to multiple printouts from the USCO's Public Records Catalogue).

II.    **Discussion**

In support of the Motion, Defendants request the Court judicially notice four documents. *See* RJN. Plaintiff has not filed an opposition to the request. The documents are listed below (with descriptions based on Defendants' descriptions of the documents):

1. Exhibit A – A true and correct copy of United States Patent No. 8,608,114, dated December 17, 2013, which is publicly available through the United States Patent and Trademark Office's ("USPTO") Patent Public Search Basic, available at https://ppubs.uspto.gov/pubwebapp/static/pages/ppubsbasic.html;

2. Exhibit B – A true and correct copy of United States Patent No. 7,036,773, dated May 2, 2006, which is publicly available through the USPTO Patent Public Search Basic, available at https://ppubs.uspto.gov/pubwebapp/static/pages/ppubsbasic.html;

3. Exhibit C – A true and correct copy of Guidance for the Contractor Performance Assessment Reporting System (CPARS), July 2024, which is publicly available at https://www.cpars.gov/cparsweb/assets/documents/CPARS-Guidance.pdf; and

4. Exhibit D – a true and correct copy of the Trade Secret Identification Document, and accompanying exhibits, filed by ALS in this action, Dkt. No. 60.

*See generally* RJN.

Exhibits A-D are public records or filings in this case, where their existence and contents (i.e., the fact that this document exists and that it contains the words it contains) cannot reasonably be disputed, and thus the Court will take judicial notice. Accordingly, the Court GRANTS Defendants' Request for Judicial Notice as to all documents, Exhibits A-D.

## MOTION TO DISMISS [DKT. NO. 65]

I.    **Applicable Law**

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## II.   **Discussion**

As discussed in further detail below, the Court DENIES the Motion. ALS has adequately pleaded all of its claims.

### A.  **ALS Has Adequately Pleaded Its Claim for Breach of Contract (First Cause of Action).**

ALS alleges the following two purported breach of contract claims: (1) misuse of ALS's intellectual property beyond the scope of the licensing agreement, 2AC ¶ 119; and (2) disclosure of confidential material in breach of the confidentiality provision of the IDIQ Contract, *id.* ¶ 122. The Court evaluates each alleged breach and finds that ALS has sufficiently alleged a breach of contract claim.

#### i.   **ALS Has Adequately Pleaded Its Claim for Breach of Contract (First Cause of Action) Based on Defendants' Misuse of Its Intellectual Property Beyond the Scope of the Licensing Provision.**

In the Second MTD Order, the Court found that ALS had not adequately pleaded harm for its breach of contract claim based on Defendants' misuse of ALS's intellectual property. Second MTD

Order at 8. Specifically, the Court held that ALS failed to allege under what theory its request for recovery is premised, or how it was harmed by Defendants' alleged misuse. *Id.* In the Second MTD Order, this Court also held that ALS does not need to allege the existence of trade secrets to assert a claim for breach of contract under the IDIQ Contract's licensing provision. *Id.*

The elements of a breach of contract claim are: (1) the existence of a contract; (2) Plaintiffs' performance of the contract; (3) defendant's material breach of the contract; and (4) damages to plaintiff resulting from the breach. *Abdelhamid v. Fire Ins. Exch.*, 106 Cal. Rptr. 3d 26, 32 (Cal. Ct. App. 2010).

Defendants argue that the 2AC does not demonstrate that Defendants' use of ALS's intellectual property went beyond the scope of the IDIQ Contract, stating that their conduct was expressly permitted by the contract. Motion at 6-7; Reply at 2-3. Even if the Court found Defendants' use was excessive, Defendants posit that ALS has again failed to properly allege damages. *Id.* at 7-8.

ALS asserts that any use of its intellectual property was limited to the fulfillment of the LMSI contract and that it has adequately pleaded reliance damages. Opposition at 6-8.

First, as held in the Second MTD Order, ALS sufficiently alleged a contract: the licensing provision of the IDIQ Contract. Second MTD Order at 9. Second, ALS has alleged its compliance with the terms and conditions of the IDIQ Contract. 2AC ¶ 125.  Third, the Court finds that ALS has sufficiently alleged Defendants' breach. Section H.8 states: "[ALS] grants to [Defendants] an irrevocable, perpetual . . . license to use, execute, reproduce, display, perform, and prepare derivative works . . . for the purpose of executing the *LMSI prime contract*." Dkt. No. 63-1 ("Ex. A") at 21 (emphasis added). Section C sets forth ALS and Defendants as the personnel to the IDIQ contract. *Id.* at 8. When read together, the IDIQ Contract provides Defendants with an irrevocable and perpetual license to utilize ALS's intellectual property in collaboration with ALS with respect to the LMSI program. Opposition at 6. By alleging that Defendants used ALS's intellectual property *after* the IDIQ contract ceased, ALS sufficiently pleads Defendants' material breach. 2AC ¶¶ 119-21.

And ALS has now adequately pleaded harm. In the 2AC, ALS claims that it suffered the loss of business opportunities, the loss of sales, and the loss of reputation approximately amounting to

over $33,000,000. *Id.* ¶¶ 122-26. In doing so, ALS addressed the Court's prior concerns regarding recovery theories. Second MTD Order at 9. Although absent from the 2AC is any allegation or discussion substantiating or explaining the amount sought, this is not required at the pleading stage, as the Court acknowledges that ALS, through discovery, could plausibly present evidence pertaining to its lost business damages. Opposition at 9; 2AC ¶ 122. ALS claims business opportunity losses, stating that Defendants obtained "at least two" additional contracts by improperly using ALS's intellectual property. 2AC ¶¶ 120-22. ALS also alleges a "$4,600,000 and $16,800,000" loss related to PCM sale, *id.* ¶ 123, as well as reputational harm due to consumer confusion over the ownership of ALS's intellectual property, *id.* ¶ 124.

Each alleged amount is not speculative simply because ALS has failed to point to which contracts were lost or how ALS arrived at the amounts.[2] Motion at 8-9. This is distinguishable from *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 962 (9th Cir. 2001), where the Ninth Circuit found that the plaintiff's allegation for damages of $48,000,000 "too speculative" at the pleading stage because the claim was for breach of an agreement to negotiate in which case the damages are predicated on an unknown hypothetical outcome. Certainly, however, certain categories of damages are prohibited: Section H.7 of the IDIQ Contract explicitly prohibits the recovery of consequential damages, including lost profits. Ex. A at 21; *see also Postal Instant Press, Inc. v. Sealy*, 51 Cal. Rptr. 3d 365, 368-69 (Cal. Ct. App. 1996); and California courts have held that reputational harm is "not recoverable in an action for breach of contract," which bars the requests for reputational and goodwill damages. 2AC ¶ 124; Motion at 11; Reply at 4; *Frangipani v. Boecker*, 75 Cal. Rptr. 4d 407, 410-11 (Cal. Ct. App. 1998); *Fletcher v. W. Nat'l Life Ins. Co.*, 89 Cal. Rptr. 78, 92 (Cal. 1970)..[3]

---

[2] The Court acknowledges that ALS, through discovery, could potentially present evidence pertaining to its lost business damages. Opposition at 9; 2AC ¶ 122. But the Court is not inclined to permit ALS to proceed through the pleading stage based on unsubstantiated allegations of lost contracts.

[3] ALS also seeks reliance damages, injunctive relief, and nominal damages and claims that these allegations are "sufficient to state a claim for breach of contract." Opposition at 8; 2AC at Prayer for Relief. The 2AC does not plead reliance damages in connection with its breach of contract claim. 2AC ¶¶ 117-26. Injunctive relief is improper where there is an adequate legal remedy—the monetary damages sought by ALS. *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels.*, 730 F.3d 1024, 1032 (9th Cir. 2013); Reply at 6. Nominal damages are not pled in the

For these reasons, the Motion is DENIED as to the breach of contract cause of action with respect to misuse of intellectual property.

### ii. ALS Has Adequately Pleaded a Claim for Breach of Contract (First Cause of Action) Based on Defendants' Breach of the Confidentiality Provision.

In its Second MTD Order, the Court similarly determined that ALS did not adequately allege harm as its claimed damage amount was speculative. Second MTD Order at 10.

The 2AC, like the 1AC, alleges that Defendants breached the confidentiality provision of the IDIQ Contract. 2AC ¶ 122.

The damages asserted under this breach of contract claim are identical to the breach of contract claim based on Defendants' misuse of its intellectual property beyond the scope of the licensing provision. As addressed above, therefore, the Court finds that ALS has adequately pleaded its claim for a number of categories of damages. The Motion is therefore DENIED as to this claim.

### B. ALS Has Adequately Pleaded Its Claim for Fraud (Second Cause of Action).

The Court previously found that ALS adequately alleged its claim for fraudulent inducement based on Defendants' pre-IDIQ Contract conduct.[4] Second MTD Order at 13-14 (relying on Waterman's December 27, 2018, email, predating the final negotiations for the IDIQ Contract).

Defendants seek clarification on the scope of ALS's fraud claim, requesting that the claim "be limited to pre-IDIQ conduct and pre-IDIQ damages" pursuant the Court's Second MTD Order. Motion at 10-11; Reply at 6-7. ALS cites to the Court's Second MTD Order, arguing that it has properly pled a fraudulent inducement claim. Opposition at 11-13.

The 2AC reasserts its claims that Defendants fraudulently induced ALS to enter the IDIQ Contract by guaranteeing a 30% workshare. *See* 2AC ¶¶ 128-35. For the fraud claim, the 2AC

---

Complaint and cannot suffice to survive a motion to dismiss a breach of contract claim. Reply at 6; *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000).

[4] Fraud and fraudulent inducement, which ALS raised in the 1AC, 1AC, share the same elements. *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 974 (1997) ("The elements of fraud . . . are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage.") (internal quotation marks omitted); MTD Order at 18 (citing *Engalla* for elements of fraudulent inducement).

asserts that "conservative estimates" of damages "could be as high as $33 million related to lost business and work." *Id.* ¶ 135.

As the Court further explained in the Second MTD Order, "the reasonableness of ALS's reliance is a question of fact. *See City Sols. v. Clear Channel Communs., Inc.*, 365 F.3d 835, 840–41 (9th Cir. 2004) ("Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact."). Second MTD Order at 13-14. Defendants misinterpret the Court's ruling, attempting to suggest that ALS's asserted damages are limited to conduct prior to the IDIQ Contract execution. Reply at 7. ALS's pleaded damages, which the Court previously determined were sufficient, Second MTD Order at 14, are identical in the 1AC and 2AC. 1AC ¶ 138-39; 2AC ¶¶ 133-34. In the 2AC, ALS has further detailed its alleged reliance damages by adding dollar amount estimates in connection with its consistent pleadings. 2AC ¶ 135; Opposition at 7-8.

Thus, the Court does not find reason to limit ALS's alleged damages. The Motion is DENIED as to the cause of action for fraud.

### C. ALS Has Adequately Pleaded Its Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Third Cause of Action).

In its Second MTD Order, the Court found that ALS did not sufficiently plead harm from Defendants' advertisement and offer for sale of ALS's intellectual property. Second MTD Order at 15.

In the 1AC, ALS had based this claim on the following grounds: (1) failure to provide ALS 30% of the workshare; (2) advertisement and offer for sale ALS's intellectual property to third parties; and (3) refusal to complete Past Performance Evaluation Forms for the ALS to obtain a General Services Administration ("GSA") Oasis Plus Award. 1AC ¶ 144. The 2AC reasserts the second and third grounds and adds the following basis: Defendants exceeded the scope of the limited license granted by ALS. 2AC ¶ 139; Motion at 12.

For a claim for breach of the implied covenant of good faith and fair dealing, the following must be alleged: (1) the parties entered into a contract; (2) plaintiff did all, or substantially all of the significant things that the contract required (or was excused from performance); (3) defendant acted

in such a way that prevented plaintiff from receiving the benefit under the contract; (4) defendant did not act fairly and in good faith; and (5) plaintiff was harmed. Jud. Council of Cal. Civ. Jury Instructions ("CACI") No. 325 (Breach of Implied Covenant of Good Faith and Fair Dealing—Essential factual Elements). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 400 (Cal. Ct. App. 1990).

As to the alleged refusal to complete evaluation forms, Defendants have demonstrated that they were not contractually obligated to complete evaluation forms. Motion at 13; Reply at 7-8. 48 C.F.R. § 42.1502(a) requires performance evaluations be "entered into CPARS," a Government reporting tool. And an "Assessing Official," how "must be a Government employee" is responsible "for preparing, reviewing, signing, and processing the evaluations" pursuant to the CPARS Guidance, which has been judicially noticed. GUIDANCE FOR THE CONTRACTOR PERFORMANCE ASSESSMENT REPORTING SYSTEM (CPARS) § 3.5.4 (July 2024), https://www.cpars.gov/cparsweb/assets/documents/CPARS-Guidance.pdf). Because Defendants are not Assessing Officials, they were not obligated to complete performance evaluations or had the ability to access CPARS.[5] Motion at 13, Reply at 7-8. Accordingly, the Court finds that this basis for this claim fails. Dismissal shall be without leave to amend, as the Court finds that this claim cannot be saved by an amendment due to the unambiguous language in Sections 42.1502 and 3.5.4. *See Manzarek*, 519 F.3d at 1031 ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.").

---

[5] ALS relies on 48 C.F.R. § 42.1502(d) which states: "For single-agency task-order and delivery-order contracts, the contracting officer may require performance evaluations for each order." Opposition at 15. Pursuant to the IDIQ Contract, the "Contracting Officer" shall refer to Defendants. Ex. A at 33; Reply at 8. Therefore, Defendants were not required to complete evaluation forms on this basis.

Additionally, the Court determines that ALS's argument that Defendants failed to complete performance evaluations that are required by the General Services Administration similarly fails as there is no obligation under the IDIQ Contract or F.A.R. §§ 37.102(a), 37.601(b). Motion at 13-14; Opposition at 16.

As to the alleged failure to obtain ALS's permission to advertise and market ALS's intellectual property to third-parties, the Court previously determined that ALS's adequately pleaded its claim, aside from damages. Second MTD Order at 11-14.

As to ALS' new ground— Defendants exceeded the scope of the limited license granted by ALS—the Court finds ALS sufficiently pleaded elements one through four for a claim for breach of implied covenant of good faith and fair dealing. Motion at 12; Opposition at 14. The 2AC alleges that Defendants' "misuse of ALS's Trade Secrets and Patents" exceeded the IDIQ Contract and also that Defendants advertised and offered the sale of ALS's intellectual property to third parties outside the scope of the LMSI Contract. 2AC ¶ 139; *Careau & Co.*, 272 Cal. Rptr. at 400. As the Court found, Defendants' use of ALS's intellectual property was limited to the fulfillment of the LMSI Contract. Ex. A at 21.

The Court also concludes that Plaintiff has now adequately pleaded how ALS was harmed. The 2AC ALS states that Defendants' misuse resulted in damages to ALS's "reputation and goodwill as well as its loss of business from the PCM . . . and potential contracts with the government in an amount estimated to greatly exceed $33,000,000." 2AC ¶ 140. The damages allegations largely reassert those made in association with ALS's breach of contract claims, and the Court therefore finds them sufficient.

For these reasons, the Motion is DENIED as to breach of implied covenant of good faith and fair dealing with respect to misuse of intellectual property and failure to obtain ALS's permission to advertise and market ALS's intellectual property to third parties.

**D. ALS Has Sufficiently Alleged a Claim for Misappropriation of Trade Secrets California Uniform Trade Secrets Act (Fourth Cause of Action).**

In its Second MTD Order, the Court found that ALS did not sufficiently allege the existence of its trade secrets and stated that "further specificity is needed to determine which of ALS's alleged trade secrets meet the definition of a trade secret." Second MTD Order at 19-20.

To prevail under the California Uniform Trade Secrets Act ("CUTSA"), the following must be shown: (1) the plaintiff owned a trade secret, (2) the defendants acquired, disclosed, or used the plaintiffs' trade secret through improper means, and (3) the defendant's actions damaged the

plaintiff. *Sargent Fletcher, Inc. v. Able Corp.*, 3 Cal. Rptr. 3d 279, 283 (Cal. Ct. App. 2003) (citing Cal. Civ. Code § 3426.1). In turn, a trade secret is information that "(1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). In other words, a trade secret "is valuable because it is unknown to others." *DVD Copy Control Ass'n. v. Bunner*, 10 Cal. Rptr. 3d 185, 192 (Cal. Ct. App. 2004).

Under the DTSA, a trade secret is similarly defined as

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

> (A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). "Confidentiality provisions constitute reasonable steps to maintain secrecy." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020).

In response to the Court's Second MTD Order and Order to file a trade secret information statement ("TSIS"), *see* Second MTD Order at 20; Dkt. No. 54 at 1, ALS filed its TSIS, Dkt. No. 60, which describes each alleged trade secret.

ALS has sufficiently alleged a claim under CUTSA.

First, ALS has sufficiently alleged that it owns the trade secrets. Defendants discuss how (1) ALS continues to fail to distinguish its trade secrets from its patents by commingling asserting the misuse of trade secrets and patents within the same allegations and (2) ALS merely states the trade

secrets are "technical" without describing the particular technique, process, or method.[6] Motion at 16-19; Reply at 9-10. Contrary to Defendants' assertions, the TSIS, in detail, explicitly provides a summary, background, description as to the economic value, and efforts to maintain the trade secret's secrecy as to each alleged trade secret. *See generally* Dkt. No. 60-1; Opposition at 20-22. The TSIS is accompanied by corresponding exhibits, including specifications as to each alleged trade secret. *Id.* The discussion contained in the TSIS as well as the specifications provide beyond vague descriptions as to each alleged trade secret. As such, for purposes Rule 12(b)(6), the Court holds that Defendants adequately alleged the existence and ownership of trade secrets. *Sargent Fletcher*, 3 Cal. Rptr. 3d at 283.

Second, ALS specifically claims that Defendants published material related to ALS's intellectual property for their own benefit without ALS's permission, sufficiently alleging that Defendants acquired, disclosed, and used ALS's trade secrets by improper means. *Sargent Fletcher*, 3 Cal. Rptr. 3d at 283; 2AC ¶¶ 151, 153-55.

Third, ALS has sufficiently pleaded that Defendants' alleged misuse of ALS's trade secrets caused harm. Although the Court finds that ALS's estimates of $33,000,000 to be speculative and unaccompanied by any alleged calculated basis, the Court concludes that the continued improper use of ALS's intellectual property constitutes adequate harm at this pleading stage. 2AC ¶¶ 157-58; *Sargent Fletcher*, 3 Cal. Rptr. 3d at 283.

Accordingly, the Court finds that ALS has adequately pleaded its claim for misappropriation of trade secrets under CUTSA.

**E.  ALS Has Sufficiently Alleged a Claim for Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (Fifth Cause of Action).**

The Court finds that the analysis for ALS's claim for misappropriation under the CUTSA applies to its analysis under the DTSA. *See InteliClear, LLC*, 978 F.3d at 657 (observing that

---

[6] Defendants further suggest that some of the "forms of alleged intellectual property purportedly identified by ALS require a public disclosure." Motion at 17. Although this may be true, whether ALS's intellectual property requires public disclosure is a "factual issue which is proper for discovery" and will not bar ALS from proceeding past the motion to dismiss pleading stage. *InteliClear,*, 978 F.3d at 662 ("The issue of whether all of the plaintiffs' alleged trade secrets have been publicly disclosed is a factual issue which is the proper subject of discovery."); Opposition at 21.

"[c]ourts have analyzed [the federal FTSA and the state CUTSA] claims together because the elements are substantially similar").

Accordingly, Court finds that ALS has adequately pleaded its claim for misappropriation of trade secrets under the Defend Trade Secrets Act.

///

## III.   Conclusion

For the reasons stated herein, the Court ORDERS as follows:

1. The RJN is GRANTED;

2. The Motion is DENIED; and

3. The Court will issue an Order Setting Scheduling Conference forthwith.

IT IS SO ORDERED.

Dated: March 24, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

14